OPINION AND ORDER
 

 NORGLE, District Judge.
 

 Before the court is Defendant’s Motion for Summary Judgment. For the following reasons, the motion is granted.
 

 I.
 

 Plaintiff Wade Lederman (“Lederman”) sustained injuries resulting from striking his head on the bottom of a swimming pool. Lederman is now a quadriplegic. Lederman was thirty-one years old on the date of his tragic injury.
 

 Lederman believes that Defendant Pacific Industries, Inc. (“Pacific”) was a cause of his injury. In his single-count Complaint, Lederman alleges that Pacific negligently manufactured and designed a swimming pool in that it: “failed to display the water depths of the swimming pool”; “failed to warn what areas around the pool were not to be used for diving”; “failed to warn that at night, with pool lights on, the depth of the water was deceptive to users of the pool”; and “failed to warn that the broad white line on the floor of said swimming pool did not mean it was safe to dive to the diving board side of that line.”
 

 The swimming pool in question is a residential, in-ground, oval-shaped pool. A white demarcation line painted on the pool bottom divides the pool into two zones: the “shallow end” and the “deep end.” The “shallow end” is two-and-a-half feet deep and extends ten feet. The demarcation line, or “transition line,” is a white, one-foot-wide painted stripe which extends the width of the pool to separate the “shallow” and “deep” ends. At this location, the pool depth gradually increases by one vertical foot every three horizontal feet, until the depth “levels off’ at a depth of seven feet, one inch. The depth then remains constant for ten horizontal feet. A diving board is located on the “deep end” of the pool, and the “shallow end” has an entrance consisting of three steps. There were no depth markers provided by Pacific to the pool purchaser, nor did Pacific provide the owners with warnings signs to post in or around the pool. Neither markers nor warning signs were placed around the pool in question.
 

 The injury occurred on July 5,1991. Lederman worked a total of five hours, and proceeded to a “family get-together” at a relative’s house. After about ten hours of celebration and carousing with family and friends, Lederman decided to go swimming in the pool. This was the first time Lederman had seen, or went swimming in, the pool.
 

 Lederman first entered the pool at approximately 10:30 p.m. He remained in the pool for an hour-and-a-half. During that time, Lederman and three others (including his brother) took part “hollering and yelling and having a good time” and “jumping off the diving board onto rafts.” Lederman also jumped from the pool sides of the pool onto rafts. While jumping off of the sides and diving board, Lederman often performed a forward flip prior to landing on the raft. Lederman remained in the “deep end,” and never used the stairs to enter or exit the pool. Before and during the above pool activities, Lederman consumed around ten beers, an indeterminable amount of tequila (right from the bottle), and a “sip” of Purple Passion (a mixed alcoholic drink). When asked if he was intoxicated during the time of his accident, he answered, “I really don’t believe I was honestly.”
 

 Lederman testified that at about midnight, he dove head first into the pool, and “the next thing [he knew] ... his arms weren’t moving.” Lederman testified that he did not notice the depth of the water at the diving point. He also testified that he was aware of the potential for serious injury when diving
 
 *622
 
 into shallow water, and was aware not only of the existence of a “shallow end” of the pool, but of the location of it.
 

 Brett Lederman (“Brett”), Plaintiffs brother, was an eyewitness to the events leading up to the injury-causing accident. Brett testified that the deep end was lighted. Brett witnessed Lederman diving head first into the deep end, as well as performing forward flips from the diving board. Lederman did not have his glasses on or contacts in during the hour-and-a-half of pool activities. At about midnight, Brett observed from five feet away Lederman’s actions immediately prior to the accident: “He started walking down the side of the pool and he said he was going to jump in one last time, and it looked like his foot went off the edge of the pool, and that is when he flipped over and hit the bottom.” Brett further clarified the event: Lederman attempted to jump from the middle area of the pool to the “deep end,” but “at some point [Lederman] put his left foot down [and] ... his left foot missed the cement and stepped into air.” When asked whether he knew “one way of another if [he] in fact did slip or misstep and fall into the pool as opposed to diving,” Lederman replied “I don’t believe I did.” The left foot continued to fall into the water, and Lederman fell backward and to his left into the pool. His head then impacted with the bottom of the pool.
 

 As an unfortunate result of the accident, Lederman received catastrophic injuries. He is now quadriplegic, unable to move his legs or arms.
 

 Lederman submitted an affidavit and deposition transcript of Gene Litwin (“Litwin”), a “swimming pool expert” who has written several publications, including an article entitled “The Duty to Warn: Disclosure Is Not The Only Answer.” Interestingly, the first paragraph of the article reads:
 

 Joey Smith took a last sip of beer and got up from his chair on the deck of the pool. He walked a few feet to the pool edge, then crouched slightly. He bent forward with his hands outstretched in front and dived in, making a clean and graceful entry into the water____ The water was three and a half feet deep. His hands hit the bottom just as the water reached his waist. His arms bent at the elbows as his dive carried his body on down to the bottom. The top of his head struck the bottom and came to an abrupt halt just as his knees entered the water____ But the dive wasn’t over. His neck was caught in the middle of this aquatic pileup, caught between his head which had halted and his body which continued to plunge towards the bottom. His lower legs were still sticking up out of the water when his neck broke. The C-4 fracture left him paralyzed from the neck down.
 

 In Litwin’s affidavit, he states several opinions, some admissible and some inadmissible. Some of Litwin’s opinions were purely legal conclusions. For example, Lit-win stated that “[o]n the date of the Lederman accident, the danger confronting him was not open and obvious”; “Pacific ... had an ongoing duty to update pool owners regarding warnings”; “Pacific ... is responsible for the unreasonably dangerous condition of that swimming pool because it was lacking in depth markers and warning signs”; and “Pacific ... breached its ongoing duty to provide information and warning signs about diving safety both from the time the pool was installed right up through the date of Wade Lederman’s accident.” These legal conclusions are improper and are stricken. The court will disregard the portions of Litwin’s affidavit that include impermissible legal conclusion,
 
 Starke County Farm Bureau Coop. Ass’n, Inc. v. Interstate Commerce Comm’n,
 
 839 F.Supp. 1329, 1337 n. 14 (N.D.Ind.1993), but will rely upon the remaining portions of the affidavit.
 
 See Pfeil v. Rogers,
 
 757 F.2d 850, 861 (7th Cir.1985) (“Because legal argumentation is an expression of legal opinion and is not a recitation of a ‘fact’ to which an affiant is competent to testify, legal argument in an affidavit may be disregarded.”).
 

 The admissible opinions include: “depth markers should have been placed at appropriate intervals to indicate every foot change in depth at a minimum”; “depth markings in and of themselves would have provided Wade Lederman ... with accurate information as to how deep or shallow it was at any given point along the length of a pool”; “[i]f one
 
 *623
 
 looks to the side wall of the pool above the water line, it all looks the same and one cannot tell if the water is at a depth of six feet, five feet, or four feet”; and “[e]ven in broad daylight, it is very difficult to visually tell how deep the water is simply by looking at the bottom of the pool.” Moreover, Litwin opined that, in addition to depth markers, warning signs (such as “Danger!,” “No Diving!,” “Shallow Water,” or “Paralysis can occur!”) were necessary to warn Lederman and other swimmers of the dangers of diving into shallow depths.
 

 II.
 

 Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c);
 
 GCIU Employer Retirement Fund v. Chicago Tribune Co.,
 
 66 F.3d 862, 864 (7th Cir. 1995). When considering a motion for summary judgment, the court may review the entire record, drawing all reasonable inferences from the record in the light most favorable to the non-moving party.
 
 Cornfield by Lewis v. School Dist. No. 230,
 
 991 F.2d 1316, 1320 (7th Cir.1993). The burden of establishing the lack of any genuine issue of material fact rests with the movant.
 
 Jakubiec v. Cities Serv. Co.,
 
 844 F.2d 470, 473 (7th Cir.1988).
 

 The non-movant, however, must make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial.
 
 Celotex Corp. v. Catrett, 477
 
 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party cannot rest on the pleadings alone, but must identify specific facts which establish that there is a genuine triable issue.
 
 Cornfield,
 
 991 F.2d at 1320. The non-movant must do more than simply “show there is some metaphysical doubt as to the material facts.”
 
 Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
 
 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). It is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record.
 
 Covalt v. Carey Canada, Inc.,
 
 950 F.2d 481, 485 (7th Cir. 1991);
 
 Collins v. Associated Pathologists, Ltd.,
 
 844 F.2d 473, 476-77 (7th Cir.1988).
 

 Here, subject matter jurisdiction rests on diversity. Lederman is a resident of Illinois, and Pacific resides in New York. In a diversity case, the district court must apply the law of the jurisdiction in which it sits.
 
 Rexford Rand Corp. v. Ancel,
 
 58 F.3d 1215, 1218 n. 6 (7th Cir.1995). This court sits in the Northern District of Illinois and, accordingly, must apply Illinois law.
 
 Id.
 
 The parties do not dispute this.
 

 In “ordinary negligence” cases in Illinois, Lederman must plead (1) that Pacific owed him a duty of care; (2) that Pacific breached that duty; and (3) that the breach was the proximate cause of Lederman’s injuries.
 
 Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.,
 
 169 Ill.2d 110, 214 Ill.Dec. 156, 160, 660 N.E.2d 863, 867 (1995).
 

 III.
 

 A. Duty of Care
 

 A duty is “an obligation to conform to a certain standard of conduct for the protection of another against an unreasonable risk of harm.”
 
 Id.
 
 Whether an individual owes another person a duty of reasonable care under a specific group of facts and circumstances is an issue not for the jury, but for the court.
 
 Bucheleres v. Chicago Park Dist.,
 
 171 Ill.2d 435, 216 Ill.Dec. 568, 573, 665 N.E.2d 826, 831 (1996). If the court finds that no duty exists, then — for obvious reasons — the plaintiff cannot prevail, and judgment must be entered in the defendant’s favor.
 
 Zion,
 
 214 Ill.Dec. at 160, 660 N.E.2d at 867.
 

 Pacific, a swimming pool manufacturer, has a duty to warn prospective users of their manufactured pools about dangers associated with reasonable use of the pool. However, Pacific had no duty to warn Lederman about dangers of which he was already aware,
 
 Blakely v. Camp Ondessonk,
 
 38 F.3d 325, 328 (7th Cir.1994) (applying Illinois law), nor does it have a duty to warn him of “open and obvious” dangers,
 
 Klen v. Asahi Pool,
 
 
 *624
 

 Inc.,
 
 268 Ill.App.3d 1031, 205 Ill.Dec. 753, 758, 643 N.E.2d 1360, 1365 (1994).
 
 [1]
 

 1. Open and Obvious Danger
 

 In cases involving obvious and common conditions, such as fire, height, and bodies of water, the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition. The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks.
 

 Bucheleres,
 
 216 Ill.Dec. at 574, 665 N.E.2d at 832.
 

 An open and obvious danger is defined as that which is visible or well known:
 

 What is “open and obvious” has been defined as what is visible, what is a well known danger, or what is discernible by casual inspection. Thus, one cannot be heard to say that he did not know of a dangerous condition that was so obvious that it was apparent to those of ordinary intelligence.
 

 American Law of Products Liability, 3d, § 33:26, p. 56. When determining “the open and obvious nature of the danger” in the products liability forum, the court must utilize the reasonable person standard, keeping in mind the age of the plaintiff.
 
 Id.
 
 In other words, the court must here apply an objective “thirty-one-year-old standard of reasonableness” to this case.
 

 Initially, the court notes the great number of cases involving the “open and obvious” danger issue in premises liability cases, rather than in products liability cases. “The distinction between these theories of recovery, though, is not with respect to the definition of open and obvious danger but, instead, with respect to the resultant duty” of the defendant.
 
 Id.
 
 As noted above, products liability defendants have no duty to warn of open and obvious dangers. On the other hand, premises owners are held to a higher standard. For example, they must still warn of dangers if “they knew or should have known that children frequent the premises and if the cause of the child’s injury was a dangerous condition on the premises.”
 
 Barham v. Knickrehm,
 
 277 Ill.App.3d 1034, 214 Ill.Dec. 721, 724, 661 N.E.2d 1166, 1169 (1996) (citing
 
 Corcoran v. Village of Libertyville,
 
 73 Ill.2d 316, 22 Ill.Dec. 701, 383 N.E.2d 177 (1978)).
 
 See also Klen,
 
 205 Ill.Dec. at 758-59, 643 N.E.2d at 1365-66 (“[A]n owner or occupier of land is no longer
 
 ipso facto
 
 relieved of the duty of reasonable care where the dangerous condition is known or obvious; rather, the ‘obviousness of a condition is ... relevant to the existence of a duty on the part of defendant’ along with other factors such as the possessor’s reasonable anticipation of harm despite the obviousness of the danger”).
 

 Pacific argues that it did not owe to Lederman a duty to warn of the dangers of diving into shallow water because such dangers were “open and obvious.” The court, for the reasons set forth in
 
 Dowen v. Hall,
 
 191 Ill.App.3d 903, 138 Ill.Dec. 933, 548 N.E.2d 346 (1989), agrees. The Illinois Appellate Court, First District, wrote:
 

 In our view, the instant facts and the reasonable inferences which may be drawn from them demonstrate as a matter of law that the danger of paralysis resulting from a flat dive off a pier into muddy waters of uncertain depth in a natural lake is open and obvious to a reasonable adult. As plaintiff himself was aware, natural lakes are of uneven depth at various points, and the muddy waters of a lake prevent a person from discerning the depth of the water. Thus a reasonable adult in plaintiffs position would recognize that an attempt to execute a head-first flat dive into the lake, without prior awareness of the depth of the waters, might result in severe injury from hitting one’s head on the lake bottom. The record here shows that plaintiff realized the importance of entering the
 
 *625
 
 water in such a way that he would avoid hitting his head on the lake bottom. Plaintiff argues that all reasonable adults believe a flat dive into shallow waters will not cause head injuries leading to paralysis. We disagree. In our view, the risk of paralysis from executing a flat dive from the pier into the uncertain depths of the natural lake was open and obvious in the instant case. Because the risk was open and obvious, defendants had no duty to warn plaintiff of that risk in the case at bar.
 

 Dowen,
 
 138 Ill.Dec. at 935, 548 N.E.2d at 348.
 

 Borrowing the reasoning of the
 
 Dowen
 
 court, the court finds that, as a matter of Illinois law, the risk of quadriplegia resulting from a dive into an area of uncertain depth of a swimming pool is an open and obvious one to a person of Lederman’s age and maturity level. A swimming pool is a relatively simple product; “there is nothing deceiving about its appearance, nothing enigmatic about its properties.”
 
 Glittenberg v. Doughboy Recreational Indus., Inc.,
 
 436 Mich. 673, 462 N.W.2d 348, 358 (1990). Because Illinois courts have held that swimming pools present dangers “open and obvious” even to six-year-olds,
 
 see Barham v. Knickrehm,
 
 277 Ill.App.3d 1034, 214 Ill.Dec. 721, 661 N.E.2d 1166 (1996),
 
 Henson v. Ziegler,
 
 279 Ill.App.3d 1025, 216 Ill.Dec. 619, 665 N.E.2d 877 (1996), and
 
 Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.,
 
 169 Ill.2d 110, 214 Ill.Dec. 156, 660 N.E.2d 863 (1995), the court can find no reason (and Lederman has neglected to provide one) to hold that similar dangers are not “open and obvious” to a thirty-one-year-old adult.
 

 This finding is consistent with clear Illinois precedent holding that diving into water of unknown depth is open and obvious. The Illinois Supreme Court recently issued an opinion regarding two companion cases, both cited at
 
 Bucheleres v. Chicago Park District,
 
 171 Ill.2d 435, 216 Ill.Dec. 568, 665 N.E.2d 826 (1996). In both cases, the adult plaintiffs dove from concrete seawalls into Lake Michigan. Both plaintiffs suffered severe spinal cord injuries, and both plaintiffs sued the Chicago Park District for failure to post warning signs. After reviewing a series of diving cases, including
 
 Dowen v. Hall,
 
 191 Ill.App.3d 903, 138 Ill.Dec. 933, 548 N.E.2d 346 (1989) (no duty owed because a reasonable adult would recognize that diving into murky water of unknown depth might result in severe injury),
 
 Hagy v. McHenry Co. Conservation Dist.,
 
 190 Ill.App.3d 833, 137 Ill.Dec. 453, 546 N.E.2d 77 (1989) (no duty to protect a fifteen-year-old from obvious risks of diving into swimming hole without checking depth), and
 
 Sumner v. Hebenstreit,
 
 167 Ill.App.3d 881, 118 Ill.Dec. 888, 522 N.E.2d 343 (1988) (no duty owed to a nineteen-year-old man who reasonably could be expected to understand that sand shifts on the bottom of a water-fiUed pit), the Illinois Supreme Court found that defendant owed no duty to warn plaintiffs of the inherent risks in diving into the lake. In so finding, the Court noted that “with or without the posting of warning signs,”
 
 id.
 
 at 837, 137 Ill.Dec. 453, 546 N.E.2d 77, “bodies of water are deemed to signal obvious danger to persons old enough to be at large because of their unknown surface or subsurface elements.”
 
 Id.
 
 at 838, 137 Ill.Dec. 453, 546 N.E.2d 77. Put another way, “bodies of water are ordinarily considered to be open and obvious conditions and thereby carry their own warnings of possible danger.”
 
 Id.
 
 at 835, 137 Ill.Dec. 453, 546 N.E.2d 77.
 

 While the above cases dealt with natural bodies of water, as opposed to a swimming pool, the holdings are applicable to the case
 
 sub judice.
 
 Since Illinois courts have found that the danger associated with the act of diving into a body of water to be open and obvious, it follows that the dangers related to diving into a swimming pool is also open and obvious.
 
 [2]
 
 As the Michigan Supreme Court
 
 *626
 
 noted, “the admonition ‘feet first’ is a matter of common knowledge where shallow water or water of an unknown depth is. involved.”
 
 Glittenberg,
 
 462 N.W.2d at 358. Swimming pools indicate plain and evident danger to a reasonable thirty-one-year-old because of the hard concrete floors and deceptive depth due to water magnification and augmentation. Poor lighting should have been more of a reason for Lederman to exercise great caution and to question the apparent depth of each section of the pool. A reasonable thirty-one-year-old would have known of the dangers of diving into the swimming pool at night, let alone after ingesting a significant amount of alcohol; thus, Pacific did not have a duty to warn Lederman of those dangers.
 

 Lederman’s arguments rely heavily on
 
 Schellenberg v. Winnetka Park Dist.,
 
 231 Ill.App.3d 46, 172 Ill.Dec. 814, 596 N.E.2d 93 (1992). But
 
 Schellenberg
 
 is distinguishable. In
 
 Schellenberg,
 
 the Illinois appellate court held that a genuine issue of fact existed as to whether the park district’s duty to exercise reasonable care encompassed a duty to warn minors of the danger of shallow water diving.
 
 Id.
 
 172 Ill.Dec. at 819, at 98. However, the authors of
 
 Schellenberg
 
 distinguished that case from the
 
 Dowen
 
 case. The
 
 Schellenberg
 
 court noted that the plaintiff was a minor, as opposed to the adult
 
 Dowen
 
 plaintiff, and that its decision specifically rested on that fact.
 
 Id.
 
 172 Ill.Dec. at 817, 596 N.E.2d at 96. Indeed, that court restricted its opinion to minors, since “the law affords special protection for children in certain eases.”
 
 Id.
 

 Moreover, as noted in
 
 Osborne v. Claydon,
 
 266 Ill.App.3d 434, 203 Ill.Dec. 764, 640 N.E.2d 684 (1994), the
 
 Schellenberg
 
 case (and the case to which it referred,
 
 Leonard v. Pitstick Dairy Lake & Park, Inc.,
 
 202 Ill. App.3d 817, 148 Ill.Dec. 165, 560 N.E.2d 467 (1990)) involved “a dive being made ... where the diver was in the water when the dive started,”
 
 Osborne,
 
 203 Ill.Dec. at 768, 640 N.E.2d at 688, where the dive here began where Lederman ran several feet before attempting to jump off of a concrete edge onto a raft. The comparison of this case with
 
 Schellenberg
 
 “is like comparing grapes and grapefruit.”
 
 Id.
 
 New people recognize “the danger of a dive being made by a person already in the water,” but the dangers of dives made into a swimming pool are common knowledge.
 
 Id.
 
 In sum, this court recognizes, as do the Illinois appellate courts, that
 
 Schellenberg
 
 is distinguishable from out-of-the-water dives, and Lederman’s reliance upon it is unpersuasive.
 

 The court is mindful of the Seventh Circuit’s opinion in
 
 Corbin v. Coleco Inds., Inc.,
 
 748 F.2d 411 (7th Cir.1984). The Seventh Circuit held that, as a matter law, the danger of serious spinal cord injury from executing a flat dive into shallow water of a pool was not “open and obvious” to a reasonable adult.
 
 Id.
 
 at 417-18. However, the
 
 Corbin
 
 case involved Indiana substantive law, and would thus only be binding were the court applying Indiana law. But it is not. The court must apply Illinois law, and, as discussed above, Illinois courts do not concur with the Seventh Circuit’s holding.
 
 Klen v. Asahi,
 
 205 Ill.Dec. at 761-62, 643 N.E.2d at 1368-69 (“To the extent Corbin finds that the danger of executing a flat or ‘shallow dive’ by an adult is not open and obvious, we do not reach that conclusion here nor do we necessarily agree that it would not be open and obvious to an adult”). The
 
 Corbin
 
 ease has no effect on this one, and the court’s judgment remains, albeit contrary to a Seventh Circuit ease, since it is consistent with Illinois law.
 

 For the foregoing reasons, the court finds that the dangers associated with the Pacific swimming pool were “open and obvious.” As such, Lederman cannot establish the first element of a negligence case, and cannot prevail. Accordingly, the court enters judgment in favor of Pacific.
 

 2. Knowledge of the Danger
 

 Had the court not found that the swimming pool dangers were “open and obvious,” the judgment would not change. As already stated, Pacific had no duty to warn
 
 *627
 
 Lederman about dangers of which Lederman was actually aware.
 
 Blakely,
 
 38 F.3d at 328;
 
 Vallejo v. Mercado,
 
 220 Ill.App.3d 1, 162 Ill.Dec. 692, 700, 580 N.E.2d 655, 663 (1991). The following testimony exhibits that Lederman realized and knew of the dangers associated with diving into shallow water, and he cannot now argue that reasonable people would not have known of such dangers:
 

 Q: You knew that if you dove into shallow water and hit your head on the bottom that you could hurt yourself seriously?
 

 A: Yes. That was a given.
 

 Lederman’s deposition testimony also shows that he knew (1) which side of the pool was the “deep” end, (2) that the floor gradually sloped from the middle demarcation line down to the end closest to the diving board, and (3) the approximate (but not actual) depths at each section of the pool. Lederman swam in the pool for approximately one- and-a-half hours prior to his accident. In that one-and-a-half hour time period, he jumped into various areas of the “deep end” and was able to determine by each jump the depth of each area at which he dove. Though no signs were posted, Lederman still knew of the risks associated with diving into the swimming pool, but neglected to take necessary precautions. Instead, Lederman frolicked in and out of the water, and continued to drink alcohol until he sustained the unfortunate injury. Nonetheless, Lederman knew, and had good reason to know, that diving into water of any depth was dangerous. Moreover, Lederman knew the relative depth of each area of the pool. The dangers were not only open and obvious, but actually known to Lederman.
 

 The court finds that Lederman cannot establish the first element of a negligence case. Pacific owed Lederman no duty to warn him of dangers actually known to Lederman, and Lederman’s claim must fail. Accordingly, the court finds in favor of Pacific and against Lederman.
 

 B. Proximate Cause
 

 Assuming
 
 arguendo
 
 that Lederman did establish the “duty” and “breach” elements of an ordinary negligence case, the court’s judgment would be no different. Lederman has provided the court with no evidence to show that Pacific’s failure to provide warning signs proximately caused Lederman’s injuries. Indeed, the evidence conclusively shows that Lederman’s foot missed the point at which he intended to push off, and that he instead fell into the pool.
 

 The following colloquy between Pacific’s counsel and Brett (Lederman’s brother), the only eyewitness to the accident, shows that Lederman did not dive into the pool, but fell prior to diving:
 

 Q: At some point [Lederman] put his left foot down and missed the cement, correct?
 

 A: Yes.
 

 Q: His left foot missed the cement and stepped into air basically?
 

 A: Yes.
 

 Q: The foot continued to go down into the water?
 

 A: Yes.
 

 Q: Well anyway, [Lederman] stepped into the air and missed the edge of the cement, is that correct?
 

 A: Yes.
 

 Q: His foot went down into — left foot went down into the water?
 

 A: Yes.
 

 Q: And he began to flip over?
 

 A: Yes.
 

 Q: He was flipping to his left side?
 

 A: Yes.
 

 Q: I take it he looked awkward?
 

 A: Very, yes.
 

 Q: And he continued to fall back to his left?
 

 A: Yes, to his left and his back kind of flipped.
 

 Q: So as he fell to his left, he also — his body turned and he went backwards?
 

 A: Yes.
 

 Q: [Lederman] hit the water on his back?
 

 A: Kind of like his back and shoulder.
 

 
 *628
 
 Q: Basically [Lederman] missed the edge of the concrete with his left foot.
 

 A: Yes.
 

 Q: That is why he went in the water at that point?
 

 Y: Yes.
 

 On cross-examination, Lederman’s attorney asked Brett the following question: “Did you form an opinion as to whether or not when [Lederman] made the step — when he made the step that missed the edge of the pool, whether or not it appeared to you that he was attempting to jump into the pool or not?” The response: “It didn’t look like he was going to like push off. It looked like he just missed it.”
 

 More telling, Lederman’s own testimony does not refute that of his brother. Rather, Lederman could not recall:
 

 Q: So you are telling us that after you took this small run before you entered the pool, you don’t know if you entered the pool trying to do a flip or if you were trying to dive with your hands straight out in front of you, is that right?
 

 A: I really don’t recall.
 

 Q: Mr. Lederman, since your last deposition and the questions that we asked you about how the accident happened, have you recalled anything new about how the accident happened?
 

 A: Not really.
 

 Q: You still don’t know how the accident happened?
 

 A: No. I wish I did, but — not that that would make it any better, I don’t think.
 

 Lederman attempts to create a factual issue by citing to Paragraph 18 of his affidavit. In Paragraph 18, he stated, “I fully intended to
 
 and believe that I did
 
 dive to the deep water side of the white demarcation line.” The statement is equivocal, and can coexist with the deposition transcripts referenced above. Lederman does not know how, why and where he fell in the pool. His brother, on the other hand, does.
 

 His brother Brett testified unequivocally that Lederman did not dive, but instead “misstepped” and fell into the pool. Lederman fell into the pool at an unintended location; he intended to jump into the deep end, but instead fell close to the white demarcation line. Thus, the existence of warning signs would have had no effect on the outcome, and the failure to issue warning signs cannot, as a matter of law, be a proximate cause of Lederman’s injuries. As such, the court would have still entered judgment in Pacific’s favor.
 

 IV.
 

 The court is cognizant of the heart-wrenching, debilitating injury resulting from Lederman’s accident. However, the severity of Lederman’s injury has no bearing on the questions of law presented to the court. The court finds that the undisputed facts show that Pacific had no duty to warn Lederman of the “open and obvious” dangers associated with swimming pool dives, and that Lederman’s injury was not proximately caused by Pacific’s failure to warn swimmers of such dangers. Accordingly, the court enters judgment in favor of Pacific and against Lederman.
 

 IT IS SO ORDERED.
 

 [1]
 

 . Much to the chagrin of opponents of the “open and obvious” doctrine (which now include Lederman),
 
 see Dunn v. Baltimore & Ohio R.R. Co.,
 
 127 Ill.2d 350, 130 Ill.Dec. 409, 537 N.E.2d 738 (1989),
 
 Ward v. K Mart, Corp.,
 
 554 N.E.2d 223 (Ill.1990), and
 
 Deibert v. Bauer Bros. Constr. Co.,
 
 141 Ill.2d 430, 152 Ill.Dec. 552, 566 N.E.2d 239 (1990), the Illinois Supreme Court recently stood fast in its adherence to the doctrine.
 
 Bucheleres,
 
 216 Ill.Dec. at 573, 665 N.E.2d at 831.
 

 [2]
 

 . Some may argue that the risks of the Pacific swimming pool are more obvious than those associated with bodies of water. Lakes, rivers, ponds, and swimming holes are all of different depths, water clarity, and have different materials at the floor, such as sand, gravel, or debris. Moreover, bodies of water have other forces, such as waves and undertow, that cause additional risks to the diver. However, while all swimming pools are not exact, they are relatively similar in that they (1) are often divided into two regions, a “shallow” and "deep” end, (2) have a
 
 *626
 
 cement floor, and (3) contain clear, chemically-cleaned-and-treated water. Visibility of depth is generally much easier in pools than in bodies of water. Since most swimming pools are much more similar than are different bodies of water, the dangers of swimming pools are also much more universal and similar, i.e. "open and obvious.”