FIRST DIVISION

No. 1-06-1447

DONALD DUFFY,                                )        Appeal from the
                                             )        Circuit Court of
            Plaintiff-Appellant,             )        Cook County.
                                             )
      v.                                     )        No. 02 L 5279
                                             )
JAMES G. TOGHER, RENEE TOGHER,               )
LATHAM PLASTICS, INC. f/k/a Pacific          )
Pools Industries, Inc., BLACK                )
OAK POOL SUPPLY, INC., and                   )
PACIFIC INDUSTRIES, INC.,                    )        Honorable
                                             )        Ralph Reyna,
            Defendants-Appellees             )        Judge Presiding.
                                             )
(Shaunna Travis,                             )
                                             )
            Defendant).                      )

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

On July 15, 2001, plaintiff Donald Duffy, age 21, dove into an in-ground swimming pool and sustained injuries that led to his becoming a quadriplegic. The swimming pool was located in the backyard of a single-family house owned and occupied by defendants James G. and Renee Togher in Palos Hills, Illinois. Defendant Black Oak Pool Supply, Inc. (Black Oak), sold the pool to the Toghers and installed the pool in their backyard; and defendant Latham Plastics, Inc.(Latham), manufactured the pool's liner. Pacific Industries, Inc. (Pacific), was simply a former name used by Latham. Defendant Shauna Travis, who is not a party to this appeal, is both

the Toghers' niece and the person who invited plaintiff to use the Toghers' pool.

Plaintiff appeals the order of the circuit court of Cook County, granting motions for summary judgment by defendants Toghers, Black Oak and Latham. For the reasons discussed below, we reverse.

BACKGROUND

The parties agree that at the time plaintiff dove into the Toghers' pool, there were: (1) no signs saying "no diving"; and (2) no markers indicating the depth of the water. At his discovery deposition, defendant James Togher testified that Vincent Perfetto, the owner of Black Oak, provided the Toghers with "no diving" signs and other warning signs that he chose not to post. At her discovery deposition, defendant Renee Togher testified that when friends and family came to use the swimming pool, she told them "no diving" because she believed that diving into the pool was "dangerous." Defendant Renee Togher testified that she repeated these oral warnings "a lot." Neither James nor Renee Togher was at home when plaintiff dove into their pool.

At his discovery deposition, plaintiff testified that he stood on the west side of the pool's perimeter and dove horizontally into the north end portion of the pool; his hands struck the bottom of the pool first, before his head. Plaintiff testified that he had never been in the Toghers' pool prior to the date of his injury, that he had not walked into the north end of the pool before he dove, that he had "seen the ladder, so [he] figured that the water's deep enough that you need a ladder to climb out of [it]," that he "figured a pool had a shallow end and a deep end," and that he assumed he was diving into the deep end of the pool.

The parties do not dispute the following facts about the Toghers' pool. The Toghers' in-

2

ground swimming pool was completed on May 10, 2000, approximately a year before plaintiff's accident. The pool is rectangular, with a length of 36 feet and a width of 18 feet. On the south end of the pool, there are broad, built-in steps leading down into the pool. The steps traverse the entire width of the pool, with hand rails on either side. At the opposite end of the pool, there is a ladder descending into the pool. The ladder is close to the north end, but located on the pool's east side. There is no diving board.

The floor of the swimming pool has a U shape, with a vinyl liner. The deepest part of the pool is in the middle, with shallow areas at both its north and south ends. The water depth in the north and south ends is less than 3 feet, while the depth in the middle is 5 feet 7 inches.

In the middle, the floor has a two-foot, flat area, with the pool's deepest depth. The floor of the pool slopes down from both its north and south ends, toward this flat area in the middle.

Plaintiff admitted at his deposition that he had gone to a bar approximately two hours prior to the accident and consumed two to three glasses of rum and Coke. Plaintiff testified at his deposition that he was approximately 5 feet 10 inches tall and weighed 180 pounds at the time of the accident, and that he was definitely not intoxicated at the time of the accident.

This case involved the affidavits and deposition testimony of several experts. Plaintiff retained Dr. Ralph Johnson, a swimming pool expert; Dr. Sam Glucksberg, a professor of psychology; and Dr. Leon Kazarian, a biomechanical engineer. Defendants retained Dr. Jerrold Blair Leikin, a toxicologist.

Dr. Ralph Johnson, a swimming pool expert retained by plaintiff, listed in his affidavit a number of ways in which the Toghers' pool violated industry standards set by the National Spa

and Pool Institute (NSPI) and the American National Standards Institute (ANSI). In his affidavit and at his discovery deposition, Dr. Johnson stated that the design of the Toghers' pool was "very unusual."

With respect to the pool liner, Dr. Johnson's affidavit stated that its design was "a dangerous, deceptive and non-traditional design in the residential pool market." Dr. Johnson explained that "[m]ixing shallow and deep water in a non-standard application is confusing, deceptive and unsafe for the ordinary pool user who expects to swim in a pool with a shallow and a deep end."

Dr. Johnson's affidavit further stated that the Toghers' pool created an "optical illusion of a deep end," with "a classic deep-end ladder" at one end of the pool; and broad steps typically associated with a shallow end, at the other end of the pool. He stated: "In my opinion, had the north end of the pool been designed with steps and handrails, this accident would not have occurred." He also observed: "In order to comply with ANSI/NPSI, the ladder should have been placed in the deepest part of the pool, which is the middle."

In addition, Dr. Johnson's affidavit stated that since "the pool bottom [was] uniform in texture and posture," the pool depth was "difficult if not impossible to judge." At his deposition, he noted that the liner was "Sparkle Blue" in color, with a "Creek Stone" pattern. Dr. Johnson testified that "[t]he pattern would help to obscure the bottom." He explained that: "If you have no pattern on the bottom, if you have a solid bottom with a contour line down, then you can perceive the slope of the pool."

Dr. Johnson also testified at his deposition about his qualifications as a swimming pool

4

expert, as follows: He received his bachelor's and master's degrees in physical education, and his doctorate in sports administration. He worked for 25 years at Indiana University of Pennsylvania, where he served as a swimming and diving coach, a director of aquatic facilities and programs, and a professor of health and physical education. In 1997, he became a professor of sport management and chairman of the sport management department at North Greenville College in South Carolina, where he is currently employed. In 1993, he founded Professional Aquatic Consultants International, which provides aquatic consulting services to clients such as the Red Cross, the YMCA and the United States Department of the Navy. He has also authored textbooks that are used by architects and engineers to design aquatic facilities.

Dr. Sam Glucksberg, a psychologist hired as an expert by plaintiff, is a professor of psychology and has been on the faculty of Princeton University since 1963. At his discovery deposition, he opined, based in part on his review of Dr. Johnson's affidavit and deposition testimony and plaintiff's deposition testimony, that it was not open and obvious that the north end of the Toghers' pool was shallow.

Dr. Leon Kazarian, a biomechanical engineer specializing in accident-related industries retained by plaintiff, submitted an affidavit and testified at his discovery deposition that plaintiff's injuries were consistent with a headfirst dive into shallow water.

Dr. Jerrold Blair Leikin, a medical physician specializing in toxicology retained by defendants, testified at his discovery deposition that he reviewed: plaintiff's deposition testimony; records of the Palos Hills fire department which responded to the accident scene; and records of Christ Hospital where plaintiff was brought after the accident. Based on his review of these

records, Dr. Leikin testified that it was his opinion that plaintiff was intoxicated at the time of the accident. Dr. Leikin also testified that a blood sample drawn from plaintiff at Christ Hospital approximately an hour after the accident contained a blood-alcohol level of .06.

In actions for driving under the influence of alcohol, the Illinois Vehicle Code requires that certain blood-alcohol levels give rise to certain presumptions. 625 ILCS 5/11-501.2(b) (West 2006). If a defendant's blood-alcohol level was .05 or less, "it shall be presumed that the person was not under the influence of alcohol." 625 ILCS 5/11-501.2(b)(1) (West 2006). If the defendant's blood-alcohol level was more than .05 but less than .08, then "such facts shall not give rise to any presumption that the person was or was not under the influence of alcohol." 625 ILCS 5/11-501.2(b)(2) (West 2006). If the defendant's blood-alcohol level was .08 or more, "it shall be presumed that the person was under the influence of alcohol." 625 ILCS 5/11-501.2 (b)(3) (West 2006).

Plaintiff's second amended complaint, which is the operative complaint on this appeal, alleged the following counts: count 1, against the Toghers, for premises liability; counts 2 and 3, against defendant Latham, for strict liability and negligence; and counts 4 and 5, against defendant Black Oak, for strict liability and negligence. Counts 6 and 7 against defendant Pacific were also for strict liability and negligence. As noted above, Pacific was merely a former name of defendant Latham and not a separate entity.[1]

---

[1]Defendants filed third-party complaints for contribution that are not at issue on this appeal. Some of the third-party defendants filed motions for summary judgment that are also not

No. 1-06-1447

In his complaint, plaintiff alleged that defendants's acts and omissions included: failing to post or provide warning signs, pool rules, depth markings or a safety rope to divide shallow from deep waters; installing a pool with an unusual floor which created a deceptive impression of depth; locating a ladder at one end, thereby creating the misleading impression of a deep end; and installing a pool that did not conform to industry standards for residential swimming pools as established by the American National Standards Institute (ANSI).

Defendants Latham, Black Oak and the Toghers all moved for summary judgment. On April 13, 2006, the trial court heard argument from all counsel concerning the summary judgment motions. The defendants' primary argument for summary judgment was that the Toghers' pool constituted an open and obvious danger, and thus none of the defendants owed a duty to warn or otherwise protect plaintiff against the danger of diving into it.

On May 17, 2006, the trial court issued a handwritten order that disposed of the summary judgment motions in one line: "All motions for summary judgment are granted, instanter." The order did not specify the trial court's reasons for granting the summary judgment motions. The order was a final judgment with respect to defendants Toghers, Black Oak and Latham. On May 18, 2006, plaintiff filed a notice of appeal, and this appeal followed.

ANALYSIS

This appeal concerns the grant of summary judgment. "[S]ummary judgment is a drastic measure [that] should only be allowed 'when the right of the moving party is clear and free from

at issue in this appeal.

7

doubt.' " Mydlach v. DaimlerChrysler Corp., 226 Ill. 2d 307, 311 (2007), quoting Purtill v. Hess, 111 Ill. 2d 229, 240 (1986).  A plaintiff is not required to prove his case at the summary judgment stage.  Jackson v. TLC Associates, Inc., 185 Ill. 2d 418, 423 (1998).  A trial court may grant summary judgment "only where 'the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Rich v. Principal Life Insurance Co., 226 Ill. 2d 359, 370 (2007), quoting 735 ILCS 5/2-1005(c) (West 2006).

On a motion for summary judgment, the trial court has "a duty to construe the record strictly against the movant and liberally in favor of the nonmoving party." Jackson, 185 Il. 2d at 423-24; Osborne v. Claydon, 266 Ill. App. 3d 434, 435 (1994).  As a result, summary judgment is not appropriate: (1) if "there is a dispute as to a material fact" Jackson, 185 Ill. 2d at 424); (2) if "reasonable persons could draw divergent inferences from undisputed material facts" Jackson, 185 Ill. 2d at 424); or (3) if "reasonable persons could differ on the weight to be given the relevant factors" of a legal standard (Calles v. Scripto-Tokai Corp., 224 Ill. 2d 247, 269 (2007)).  A trial court's grant of summary judgment is subject to de novo review.  Rich, 226 Ill. 2d at 370.

For the reasons discussed below, summary judgment was not appropriate in this case.  The record creates a genuine issue of material fact about whether the defendants knew there was a danger and failed to follow through on their duty to warn.  Defendant Latham, the manufacturer of the pool liner, created sticky labels of warning, which it passed to defendant Black Oak, the installer.  Black Oak, in turn, passed the sticky labels to the customer, even though it knew customers rarely stuck them on their pools.  As expected, defendant James Togher did not stick

the labels on his pool, which left his wife Renee telling people not to dive. In short, the record creates a genuine issue of material fact about whether the Toghers' pool was an accident waiting to happen. Below, we discuss in detail each theory of liability against each defendant.

### Defendant Toghers

In his complaint, plaintiff alleged one count of premises liability against defendant Toghers. Generally, "[a] possessor of premises has a duty to guard against harm to an invitee." Matthews v. Avalon Petroleum Co., 375 Ill. App. 3d 1, 14 (2007), citing LaFever v. Kemlite Co., 185 Ill. 2d 380, 391 (1998).

The Toghers' attorney stated to the trial court during argument that the Toghers were moving for summary judgment "on one point and one point only": that they did not owe plaintiff a duty of care because their pool posed an open and obvious danger. The defendant Toghers' argument is based on "the principle of Illinois law which holds that persons who own, occupy or control and maintain land are not ordinarily required to forsee and protect against injuries from potentially dangerous conditions that are open and obvious." Jackson, 185 Ill. 2d at 424-25, Bucheleres v. Chicago Park District, 171 Ill. 2d 435, 445-47 (1996).

The question of whether a particular landowner owed a duty of care to a particular invitee under a theory of premises liability is a question of law. LaFever v. Kemlite Co., 185 Ill. 2d 380, 388 (1998). However, when a court cannot conclude as a matter of law that a condition posed an open and obvious danger, then "the obviousness of the danger is for the jury to determine." Klen v. Asahi Pool, Inc., 268 Ill. App. 3d 1031, 1044 (1994); Simmons v. American Drug Stores, Inc., 329 Ill. App. 3d 38, 43 (2002) ("Whether a condition presents an open and obvious danger is a

question of fact."), cited by <u>Sollami v. Eaton</u>, 201 Ill. 2d 1, 20-21 (2002) (Harrison, C.J., dissenting) ("Whether a condition presents an open and obvious danger is a question of fact for the trier of fact"), <u>Buchaklian v. Lake County Family Young Men's Christian Ass'n</u>, 314 Ill. App. 3d 195, 203 (2000) ("summary judgment is not proper when reasonable minds could differ as to whether a condition was open and obvious[;] *** such a determination involves a finding of fact").

The general rule in Illinois is that a body of water presents an open and obvious danger whether it is naturallyoccurring, such as Lake Michigan, or it is man-made, such as a swimming pool. <u>Jackson</u>, 185 Ill. 2d at 425 (providing citations to cases).[2] Despite the general rule, Illinois courts have found that the dangers of particular bodies of water were <u>not</u> open and obvious. <u>Jackson</u>, 185 Ill. 2d at 426-27 (submerged pipe created danger in lake that was not open and obvious); <u>Klen</u>, 268 Ill. App. 3d at 1044 (danger of dive into shallow, above-ground pool was not open and obvious to reasonable 14 year-old); <u>Schellenberg v. Winnetka Park District</u>, 231 Ill. App. 3d 46, 51-52 (1992).

In addition, the "one and only" ground asserted by the Toghers in support of their summary judgment motion is not an absolute bar to liability. <u>Calles</u>, 224 Ill. 2d at 271. Our

---

[2]Approximately 20 court cases involving headfirst aquatic injuries have occurred in Illinois since 1990. Clement, <u>Risk Management Issues in Sport:  Headfirst Aquatic Incident Court Decisions: The Plaintiff's Odds</u>, 17 J. Legal Aspects of Sport 107, 125 (Winter 2007) (listing 19 Illinois state and federal court cases between 1990 and 2005).

supreme court has held with respect to a premises liability claim that "[t]he existence of an open and obvious danger is not a *per se* bar to finding that a defendant who owns, occupies or controls land has a duty to exercise reasonable care." Jackson, 185 Ill. 2d at 425, Bucheleres, 171 Ill. 2d at 449 (not "an automatic or *per se* bar"). Other relevant factors include: "[1] the likelihood of injury, [2] the reasonable forseeability of such injury, [3] the magnitude of [the burden of] guarding against the injury, and [4] the consequences of placing that burden on the defendant." Jackson, 185 Ill. 2d at 425, Bucheleres, 171 Ill. 2d at 456. Our supreme court has held that once a court finds that a danger is open and obvious, the court's analysis is not "complete" until it has analyzed these four "traditional" factors. Jackson, 185 Ill. 2d at 425, Bucheleres, 171 Ill. 2d at 456.

The Toghers' brief to the trial court sought summary judgment on one ground only: "The Toghers did not owe the plaintiff a duty to warn against 'open and obvious' dangers." Dr. Johnson, an expert hired by plaintiff, stated in his affidavit and at his deposition, that the design of the Toghers' pool was "very unusual." First, Dr. Johnson's affidavit stated that the design was "unsafe for the ordinary pool user" who expects a pool to have both a shallow and a deep end. Second, Dr. Johnson's affidavit stated that the problem was compounded by an "optical illusion of a deep end," created by the placement of a classic deep-end ladder at one end of the pool, and the placement at the opposing end of broad steps typically associated with a shallow end. Third, Dr. Johnson's affidavit observed that the pool bottom was uniform in texture and pattern, which Dr. Johnson stated made the pool depth "difficult if not impossible to judge." At his deposition, he testified that the "Sparkle Blue" color in the "Creek Stone" pattern "would help to obscure the

11

bottom." The expert's affidavit and deposition testimony created a material issue of fact about whether a shallow bottom in a "deep end" section of the pool was a nonobvious danger.

Plaintiff testified at his deposition that it was this illusion that caused him to assume it was safe to dive. However, the obviousness of the danger and the duty to warn are decided not based on plaintiff's own subjective perception but by an objective standard. Klen, 268 Ill. App. 3d at 1041.

The Toghers' appellate brief cited three cases which held that a swimming pool was an open and obvious danger. All three cases are readily distinguishable from the case at bar. First, in Osborne v. Claydon, 266 Ill. App. 3d 434 (1994), the appellate court affirmed a grant of summary judgment against a 17-year-old plaintiff who suffered spinal injuries from a headfirst dive into a pool located in defendants' backyard. The appellate court in Osborne held that defendants had "no reason to believe that a 17 year old *** would not appreciate the obvious danger of attempting a running dive into the shallow end of the pool." Osborne, 266 Ill. App. 3d at 440. By contrast, in the case at bar, the end of the pool into which plaintiff dove was not obviously a shallow end.

Second, in Barham v. Knickrehm, 277 Ill. App. 3d 1034, 1038-39 (1996), the appellate court held that an aboveground swimming pool with a uniform depth of 3 ½ feet was an open and obvious danger to a reasonable 13-year-old.[3] Unlike the pool in Barham, the Toghers' pool did

---

[3]The 1996 holding in Barham contradicts the 1994 holding in Klen, where this court held that it could not find as a matter of law that the danger of a shallow, aboveground pool was

not have a uniform depth and was not above ground. Plaintiff in the case at bar alleged that the danger of the Toghers' pool was due, in part, to its unpredictable variation in depth. In addition, depth is usually more obvious in an aboveground pool than in an in-ground pool like the Toghers' pool. Thus, the pool in Barham is readily distinguishable from the pool in the case at bar.

Third, in Lederman v. Pacific Industries, Inc., 119 F.3d 551 (7th Cir. 1997), the Seventh Circuit Court of Appeals held that the swimming pool at issue posed an open and obvious danger under Illinois law. Lederman, 119 F.3d at 555. The swimming pool in Lederman was an in-ground pool, with a shallow end and a deep end. Lederman, 119 F.3d at 552. There were three steps leading down into the shallow end; and a diving board was located at the opposite, deep end. Lederman, 119 F.3d at 552-53. A one-foot-wide white line was painted across the bottom of the pool, to separate the shallow end from the deep end. Lederman, 119 F.3d at 553. It was unclear whether plaintiff dove into the shallow or deep end: plaintiff's brother testified that plaintiff stood near the middle of the pool and attempted to dive into the deep end but lost his footing, while plaintiff denied slipping. Lederman v. Pacific Industries, Inc., 939 F. Supp. 619, 622 (N.D. Ill. 1996), aff'd 119 F.3d 551 (7th Cir. 1997). The Toghers' pool is nothing like the pool in Lederman. The Toghers' pool did not have either a deep end or a white line painted across the bottom to indicate depth. Thus, the swimming pool cases discussed in the Toghers' appellate brief are readily distinguishable from the facts at hand.

---

obvious to a reasonable 14-year-old. Klen, 268 Ill. App. 3d at 1044. The Barham opinion made no mention of the opposing decision issued by this court two years earlier in Klen.

Plaintiff claims that the shallow depth of water in what normally would have been the deep end is analogous to the danger created by the submerged pipe in <u>Jackson</u>. In <u>Jackson</u>, plaintiff alleged that her son, a 19-year-old adult, died after diving into the deep end of a swimming area and hitting his head on a submerged pipe. <u>Jackson</u>, 185 Ill. 2d at 422. Our supreme court held that the danger of the submerged pipe was not open and obvious. <u>Jackson</u>, 185 Ill. 2d at 426. Like the submerged pipe in <u>Jackson</u>, the unusual danger of the Toghers' pool, namely its "optical illusion" of depth, was also submerged. Dr. Johnson, plaintiff's swimming pool expert, stated in his affidavit that the Toghers' pool created an "optical illusion of a deep end." We cannot reach a conclusion as a matter of law that the danger of the Toghers' pool was obvious. As this court has held before, "[w]here there is a doubt, the obviousness of the danger is for the jury to determine." <u>Klen</u>, 268 Ill. App. 3d at 1044.

Even if the trial court had properly found that the danger of the Toghers' pool was open and obvious, that finding by itself would not have been enough for a grant of summary judgment. <u>Schellenberg</u>, 231 Ill. App. 3d at 53 ("Even if a risk is considered open and obvious, a duty to warn may still be imposed"). The trial court was still required to analyze the four "traditional" factors. <u>Jackson</u>, 185 Ill. 2d at 425; <u>Bucheleres</u>, 171 Ill. 2d at 456,

With respect to the first two traditional factors, the likelihood of injury and the reasonable forseeability of such injury, defendant Renee Togher's deposition testimony created a genuine issue of material fact when she admitted that diving into her pool was dangerous and she felt compelled to repeatedly warn others of this danger. <u>Schellenberg</u>, 231 Ill. App. 3d at 52 ("a duty to warn arises where the existence of a dangerous condition is known *** and it is not apparent

to the other party"). Also, defendant James Togher testified that he received a plastic warning sign from defendant Black Oak. The sign stated: "Danger. Shallow water. No diving. Diving may cause death, paralysis or permanent injury." [4]

With respect to the last two relevant factors, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on defendant Toghers, defendant James Togher's deposition testimony created a genuine issue of material fact when he admitted that he was provided with "no diving" and warning signs that he chose not to post, although his wife admitted that she knew that she had a dangerous situation in the use of their pool. Jackson, 185 Ill. 2d at 427 (duty to warn was based, in part, on the fact that the danger could have been "eliminated at virtually no cost or expense" to defendant). Defendant James Togher testified that after completion of the pool, Vincent Perfitto, the owner of defendant Black Oak, provided both adhesive "no diving" signs to attach to the pool liner and a plastic warning sign that could be hung near the pool. Togher testified that Perfitto told him that the "liner information" indicated the appropriate placement of the adhesive warning signs. Thus, the record created genuine issues of material fact with respect to all four of the traditional factors. Rich, 226 Ill. 2d at 370 (a genuine issue of material fact requires the denial of a summary judgment motion).

Prior to the trial court's summary judgment decision, defendants offered the affidavit and deposition testimony of a medical toxicologist who offered an opinion about plaintiff's

---

[4]The sign was read into the record by an attorney at the deposition of Vincent Perfitto, owner of defendant Black Oak, in the context of asking Perfitto a question about it.

intoxication at the time of the accident.  Plaintiff's alleged intoxication does not affect this court's analysis of whether the danger was open and obvious.  Open and obvious is evaluated on an objective standard.  Lederman v. Pacific Industries, Inc., 119 F.3d 551, 554 (7th 1997) (after stating "whether a  particular danger is open and obvious is an objective inquiry," appellate court affirmed without even mentioning plaintiff's alcohol consumption, which had been noted in the district court's opinion), affirming Lederman v. Pacific Industries, Inc., 939 F. Supp. 619, 626 (N.D. Ill. 1996)[5]; Mt. Zion State Bank& Trust v. Consolidated Communications, Inc., 169 Ill. 2d 110, 126 (1995); Klen , 268 Ill. App. 3d at 1035, 1042 n.10 (1994) ("objective standard").  Plaintiff's alleged intoxication may later be relevant to issues such as proximate cause, assumption of risk and contributory negligence, which were not raised as issues on this appeal.  Klen, 268 Ill. App. 3d at 1035, 1042 n.10 (proximate cause, assumption of risk); Bucheleres, 171 Ill. 2d at 447 (contributory negligence)[6]; Barham, 277 Ill. App. 3d at 1039-40 (proximate cause).  However, it

_____

[5]The Toghers' appellate brief cited the federal district court's opinion in Lederman without citing the subsequent appellate court's opinion.

[6]In a footnote to their appellate brief's statement of facts, the Toghers argue that their expert's testimony would meet the requirements for admissibility set forth by the appellate court in Bodkin v. 5401 S.P., Inc., 329 Ill. App. 3d 620 (2002).  In Bodkin, this court stated that Illinois courts in negligence cases have "consistently held that evidence of alcohol consumption is inadmissible absent a showing of intoxication resulting in impairment of mental or physical abilities and a corresponding diminution in the ability to act with ordinary care."  Bodkin, 329 Ill.

is not relevant to the determination of the duty owed by defendants, which is the issue on this appeal. Klen, 268 Ill. App. 3d at 1042 n.10.

In addition, if we were to find that the unknown depth of the Toghers' pool was an open and obvious danger, then we must find that the design of the pool was a distraction. The open and obvious rule has two exceptions: (1) the distraction exception; and (2) the deliberate encounter exception. Blue v. Environmental Engineering, Inc., 215 Ill. 2d 78, 106 (2005); LaFever v. Kemlite Co., 185 Ill. 2d 380, 391 (1998). The deliberate encounter exception states that a possessor of premises is liable for an open and obvious danger "when the possessor 'has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." LaFever, 185 Ill. 2d at 391, quoting Restatement (Second) of Torts, §343A, Comment *f*, at 220 (1965). The deliberate encounter exception has no application to this case.

The distraction exception states that "the possessor of the premises should anticipate harm to an invitee when the possessor 'has reason to expect that the invitee's attention may be

App. 3d at 634. This court further observed that "[i]ntoxicating beverages affect different persons in different ways and some persons would be intoxicated by the consumption of a quantity of alcohol which might have no effect on another person." Bodkin, 329 Ill. App. 3d at 634. This court takes no position concerning the future admissibility of evidence of plaintiff's alleged intoxication or its relevance to the possible issues of proximate cause, assumption of risk or contributory negligence.

17

distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.' " LaFever, 185 Ill. 2d at 391, quoting Restatement (Second) of Torts, §343A, Comment *f*, at 220 (1965). The combination of a number of factors about the Toghes' pool came together to create a distraction, or as Dr. Johnson phrased it, "an optical illusion." These factors included: the placement of a classic deep-end ladder in a shallow end; the positioning of broad, shallow-end steps on the side opposing the classic deep-end ladder; the mixing of shallow and deep waters in a nontraditional design which confounded the ordinary swimmer's expectation of a deep and a shallow end; and a "Sparkle Blue" color in a repeating "Creek Stone" pattern which helped to obscure the bottom.

For the reasons stated above, we reverse the trial court's grant of summary judgment in favor of defendant Toghers.

### Defendant Black Oak

Plaintiff sued defendant Black Oak, the seller and installer of the pool, for negligence and strict liability. To succeed on a negligence claim, a plaintiff must prove that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the plaintiff suffered an injury; and (4) the plaintiff's injury was proximately caused by the defendant's breach. Calles, 224 Ill. 2d at 270; Harlin v. Sears Roebuck & Co., 369 Ill. App. 3d 27, 32 (2006); Simmons, 329 Ill. App. 3d at 42.

To succeed on a strict liability claim, a plaintiff must prove that a product was sold in an unreasonably dangerous condition. Calles, 224 Ill. 2d at 254. Illinois courts utilize two tests to determine whether a product was unreasonably dangerous: the consumer expectation test; and

18

the risk utility test. Calles, 224 Ill. 2d at 254-56. A plaintiff may succeed by proving the elements of either test. Calles, 224 Ill. 2d at 255. Under the consumer expectation test, a plaintiff succeeds by proving that "the product failed to perform as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." Calles, 224 Ill. 2d at 256. Under the risk utility test, a plaintiff succeeds by proving that "the magnitude of the danger outweighs the utility of the product, as designed." Calles, 224 Ill. 2d at 259.

In its brief to the trial court, defendant Black Oak sought summary judgment solely on the ground that it had no duty to warn concerning an open and obvious danger. As already discussed above, this court cannot reach a conclusion as a matter of law that the danger of the Toghers' pool was obvious. Even if we could reach such a conclusion, that holding by itself would be insufficient to sustain a grant of summary judgment. Obviousness of a danger is not an absolute bar to either a negligence claim or a strict liability claim. Calles, 224 Ill. 2d at 259, 262-263, 271. In a negligence suit, we are still required to consider the four traditional factors: (1) the likelihood of injury; (2) the reasonable forseeability of such injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. Simmons, 329 Ill. App. 3d at 42; Buchaklian, 314 Ill. App. 3d at 200. Under the risk utility test for a strict liability claim, "the court must balance factors it finds relevant to determine if the case is a proper one to submit to the jury." Calles, 224 Ill. 2d at 266. Suggested factors include the likelihood of injury and the burden on the defendant, with respect to the cost, feasibility and availability of an alternative. Calles, 224 Ill. 2d at 264-65.

With respect to the first two traditional factors, the likelihood and forseeability of injury,

19

Vincent Perfitto, owner of defendant Black Oak, created a genuine issue of material fact when he admitted at his deposition that it would have been "a very good idea" to post "no diving" signs at the Toghers' pool "to warn somebody prior to jumping in shallow water" because it is "very possible" that a person can sustain a cervical injury from such a jump. Schellenberg, 231 Ill. App. 3d at 52 ("a duty to warn arises where the existence of a dangerous condition is known *** and it is not apparent to the other party"). Perfitto also testified that he left the decision to the customer whether to post the warning signs but that, in his experience, customers posted the warning signs "not too often."

With respect to the second two factors, the magnitude and consequences of placing the duty to warn on defendant Black Oak, Perfitto created a genuine issue of material fact when he testified that it takes "maybe 15, 20 minutes" to install the adhesive warning stickers and the plastic warning signs. He also testified that installation required only "a good eye [and] a level," and that his company received the warning stickers and signs from the liner manufacturer in a "safety packet." Jackson, 185 Ill. 2d at 427 (duty to warn was based, in part, on the fact that the danger could have been "eliminated at virtually no cost or expense" to defendant). Thus, the record created genuine issues of material fact with respect to all four of the traditional factors. Rich, 226 Ill. 2d at 370 (a genuine issue of material fact requires the denial of a summary judgment motion).

For the reasons stated above, we reverse the trial court's grant of summary judgment in favor of defendant Black Oak.

Defendant Latham

As with defendant Black Oak, plaintiff's complaint against defendant Latham, the manufacturer of the pool's liner, also alleged claims of negligence and strict liability. In its brief to the trial court, defendant Latham moved for summary judgment on two grounds: (1) the Toghers' pool was an open and obvious danger and thus required no warning from defendant Latham; and (2) as the manufacturer of a component part, defendant Latham owed no duty arising out of the final assembly of a pool that was designed and built by others.

As already discussed above, this court cannot reach a conclusion as a matter of law that the danger of the Toghers' pool was obvious; and even if we could reach such a conclusion, that holding by itself would be insufficient to sustain a grant of summary judgment. In a case involving a manufacturer, our supreme court held that the "open and obvious nature of a danger is just one factor in evaluating" claims for negligence and strict liability, but "[i]t is not dispositive." Calles, 224 Ill. 2d at 271. Our supreme court explained that the policy reason behind the rejection of an absolute bar was the desire to encourage the consideration of alternative and safer designs. Calles, 224 Ill. 2d at 262.[7]

With respect to the first two traditional factors, defendant Latham's safety packet created a genuine issue of material fact with respect to the likelihood and forseeability of injury. The

---

[7]The supreme court stated that it rejected an absolute bar in the negligence context for the same reasons already stated in its earlier discussion of strict liability. Calles, 224 Ill. 2d at 271. The citation in the text is to the court's strict liability discussion.

packet was provided by Latham to Black Oak, which, in turn, provided it to James Togher; and it included numerous warnings against the dangers of diving into the Toghers' pool. Schellenberg, 231 Ill. App. 3d at 52 ("a duty to warn arises where the existence of a dangerous condition is known *** and it is not apparent to the other party").

With respect to the second two traditional factors, the magnitude and consequences of placing the duty to warn on defendant Latham, the deposition testimony of John Oliver created genuine issues of material fact. Oliver was Latham's technical service manager at the time that the Toghers' pool was installed.[8] Oliver admitted that after an accident in another lawsuit and prior to the accident in the instant case, he spoke with Dave Morris of Vinyl Plastics, Latham's vinyl manufacturer, about imprinting warning signs directly on the vinyl of the pool liner. After Morris indicated that the warnings would make the liner less attractive, Oliver took no further steps. Instead, Latham chose to provide sticky labels of warning in its safety packet. No explanation was offered as to why sticky labels were more attractive – unless, of course, nobody expected the customer to use them. Oliver testified that only 15% of its customers returned the cards provided

---

[8]Oliver testified that he was hired in 1995 as Latham's "Manager of Customer and Technical Service" and worked there for almost 10 years. At "sometime in 2001," his title changed to "Technical Support Manager", and he was no longer responsible for customer service. He then wrote Latham's procedures and manuals "on how to install a liner, how to build a pool, and how to assemble products, resolution of problems encountered commonly, things of that nature."

in Latham's safety packet to indicate that they had received or applied the warning signs.

In addition, Dr. Johnson, plaintiff's expert, testified at his deposition that "[y]ou can put warnings on liners," that "there [was] an obligation on the part of Latham to put some of those warning on their vinyl liner," that "the ability to print warnings or anything that you want to on vinyl has been available in the industry going clear back to 1983" and that "there [was] no reason Latham couldn't have done it." In Dr. Johnson's opinion, "the swimming pool industry needs to take a more proactive stance on making the pool safer with depth markers and diving warning signs and those kinds of things." Thus, the record created genuine issues of material fact with respect to all four of the traditional factors. Rich, 226 Ill. 2d at 370 (a genuine issue of material fact requires the denial of a summary judgment motion).

In the alternative, Latham sought summary judgment on the ground that, as the manufacturer of a component part, it owed no duty arising out of the final assembly of a pool that was designed and built by others. In its brief to the trial court, Latham did not cite a single supporting case in this section of its brief. In its appellate brief, it cited one case in support of this point: Loos v. American Energy Savers, Inc., 168 Ill. App. 3d 558 (1988).

In Loos, plaintiff alleged defendant had manufactured tower support legs that were not strong enough to support the designed tower, which subsequently toppled. Loos, 168 Ill. App. 3d at 560. In support of its motion for summary judgment, defendant submitted an affidavit from its vice-president for manufacturing stating that defendant "was not provided with any information from which it could judge whether the strength of the tower would be appropriate." Loos, 168 Ill. App. 3d at 563. The appellate court held that while "[a] component part manufacturer may be

23

found strictly liable for the injuries attributable to the defective component," plaintiff failed to submit any evidence to contradict defendant's affidavit. Loos, 168 Ill. App. 3d at 563. Thus, the trial court properly granted summary judgment.Loos, 168 Ill. App. 3d at 563.

By contrast, Oliver's deposition testimony created a material issue of fact about both whether Latham had sufficient information to judge the appropriateness of its component part. Oliver testified that the National Spa and Pool Institute (NSPI)[9] set industry standards for residential, nondiving pools, and that the design of the Toghers' pool, as reflected on a drawing by a Latham employee, did not meet a number of NSPI standards. Oliver acknowledged that one of the purposes of the NPSI standards was safety. Although Oliver claimed that compliance with NSPI standards was not Latham's responsibility but the responsibility of the installer of the pool, he acknowledged that Latham's owner's manual,[10] which was delivered to the Toghers, guaranteed that the liner was produced in conformity with NSPI standards.[11] Thus, the record

---

[9]Oliver testified that the NSPI was "an industry-related group that promotes the products that are sold and installed by the pool industry" and that defendant Latham belonged to NSPI.

[10]At his deposition, Oliver read into the record the following portion of Latham's pool owner manual: "The National Spa & Pool Institute, NSPI, in association with American National Standards Institute, ANSI, developed standards for residential swimming pools. This liner was produced in conformance with either the ANSI, NSPI 1995 or ANSI NSPI 4 1992 design standard."

[11]In addition, Oliver admitted that he had seen language employed by Cardinal Systems ,

24

created a genuine issue of material fact concerning the appropriateness of the component part manufactured by defendant Latham.

The dissent makes a number of legal errors. First, the dissent's one and only point is that the Toghers' pool was not an open and obvious danger. Our supreme court could not have been more clear: "open and obvious" is not an absolute bar to liability. Jackson, 185 Ill. 2d at 425. Thus, even if we were to assume for a moment that the dissent was correct and that the Toghers' pool was an open and obvious danger, our inquiry cannot end there. We must still proceed to analyze the four traditional factors, which the dissent failed to do. As already discussed above, the record created material issues of fact with respect to all four factors and with respect to each defendant.

The dissent tries to distinguish the supreme court's holding in Jackson, 185 Ill. 2d at 426, by stating "Jackson involved a risk of injury known to the owner but unknown to the invitee." Slip op. at 32. But that is the very case we have here. Renee Togher was aware of the risk, that is why she told people not to dive. Latham and Black Oak were aware of the risk, that is why they distributed warnings. The only party who was not alert to the risk was the person who is

_____

Inc., which was the manufacturer of the steel panels for the Toghers' pool, to the effect that Cardinal's dig specifications should be verified by the liner manufacture to insure that they complied with NSPI standards. Oliver testified that Latham worked on a daily basis with Cardinal.

now a quadriplegic as a result.

The dissent also asserts that "we need not engage in such [traditional duty] analysis in this case on the authority of <u>Bucheleres</u>." Slip op. at <u>32</u>. In <u>Bucheleres</u>, our supreme court found that a danger was "open and obvious" and then proceeded to analyze each and every one of the four traditional factors. <u>Bucheleres</u>, 171 Ill. 2d at 456. Far from eliminating the traditional analysis, the <u>Bucheleres</u> case requires it.

Second, the dissent discusses the Seventh Circuit's opinion in the <u>Lederman</u> case as though it supports a finding against plaintiff. We can all agree that the depths of the pool in <u>Lederman</u> were "open and obvious": that pool had a shallow end and a deep end, and a big white line painted across the bottom to separate the two. The <u>Lederman</u> pool was a conventional pool, and was nothing like the Toghers' pool. A finding against the <u>Lederman</u> plaintiff has little bearing on our case.

Third, the dissent claims "there is no factual support" for Dr. Johnson's opinion. Slip op. at 29. Dr. Johnson provided plenty of factual support, in both his affidavit and at his deposition. These facts included, and were not limited to: the mixing of shallow and deep waters in a nontraditional design which confounded the ordinary swimmer's expectation of a deep and a shallow end; the placement of a classic deep-end ladder in a shallow end; the positioning of broad, shallow-end steps on the side opposing the classic deep-end ladder; and a "Sparkle Blue" color in a repeating "Creek Stone" pattern which helped to obscure the bottom. Dr. Johnson also discussed how this design violated a number of industry standards.

Fourth, the dissent cites <u>Glass v. Morgan Guaranty Trust Co.</u>, 238 Ill. App. 3d 355

26

(1992), out of context. The dissent cited Glass for the proposition that: " 'The optical illusion is in the mind of the beholder.' " Slip op. at 30. Glass, 238 Ill. App. 3d at 359. In Glass, the optical illusion was only in the mind of the plaintiff. Glass, 238 Ill. App. 3d at 357-59. In response to a summary judgment motion, the plaintiff in Glass offered only plaintiff's subjective belief that an optical illusion was created by the stairs down which she fell. Glass, 238 Ill. App. 3d at 357-59. This court noted in that case that plaintiff failed to "identify an expert witness to substantiate" her claims or "any engineering and architectural standards that allegedly were violated," and thus we affirmed the grant of summary judgement in favor of defendant. Glass, 238 Ill. App. 3d at 359, 362. By contrast, plaintiff in the case at bar supplied what the Glass plaintiff failed to provide: a list of violated industry standards; and an expert's opinion based on factual support that the pool created an optical illusion. Applying Glass to our facts requires a reversal.

CONCLUSION

In sum, we cannot conclude as a matter of law that the danger of the Toghers' swimming pool was open and obvious. Plaintiff's swimming pool expert stated that the Toghers' pool created an "optical illusion of a deep end" and that its design was "very unusual." In addition, an open and obvious danger is not an absolute bar to a plaintiff's recovery. A court must still consider the traditional factors of the likelihood and forseeability of injury, and the magnitude and consequences of placing a duty to warn on defendants.

The record created a genuine issue of material fact as to whether the defendants in this case knew there was a danger and failed to follow through on their duty to warn. Defendant

Latham, the manufacturer of the pool liner, created sticky labels of warning, which it passed to defendant Black Oak, the installer. Black Oak, in turn, passed the sticky labels to the customer, even though it knew customers rarely stuck them on their pools. As expected, defendant James Togher chose not to stick the labels on his pool, which left his wife Renee telling the people she saw, not to dive. After reading the affidavits, deposition transcripts and other evidence in this case, this court concludes that the record creates a genuine issue of material fact about whether the Toghers' pool was an accident waiting to happen. For the reasons stated above, we reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded with instructions.

CAHILL, P.J., concurs.

JUSTICE GARCIA, dissenting:

I cannot agree with the majority that "[t]he expert's affidavit and deposition testimony created a material issue of fact about whether a shallow bottom in a 'deep end' section of the pool was a nonobvious danger." Slip op. at 14. In my judgment there is no factual support for the expert's opinion. "An expert's opinion is only as valid as the bases and reasons for the opinion. When there is no factual support for an expert's conclusions, his conclusions alone do not create a question of fact." Gyllin v. College Craft Enterprises, Ltd., 260 Ill. App. 3d 707, 715, 633 N.E.2d 111 (1994).

28

Dr. Johnson's opinion centers on his contention that the pool design created an "optical illusion of a deep end." I am unpersuaded that a claimed "optical illusion" can be the basis either to create a material factual question or, to the extent the plaintiff means to suggest the existence or not of the "optical illusion of a deep-end" was for the trier of fact to determine, to form a factual question itself. In my judgment, the claim of an "optical illusion of a deep-end" is no different from the thought each unfortunate plaintiff must have had after the disastrous dive: "I thought the water was deeper." The plaintiff's contention that a material question of fact remains based on Dr. Johnson's conclusions transforms the objective inquiry in the duty-to-warn analysis into a subjective one. See Klen, 268 Ill. App. 3d 1031 (duty to warn is determined using an objective standard). With my apologies to all poets, it becomes no longer an objective inquiry but a subjective assertion: "The optical illusion is in the mind of the beholder." See Glass v. Morgan Guaranty Trust Co., 238 Ill. App. 3d 355, 359, 606 N.E.2d 384 (1992) (liability claim founded on "optical illusion" that "steps [tended] to blend together visually" rejected because plaintiff's position that landowner should have constructed steps differently goes beyond what the law requires for duty of reasonable care).

I also disagree that the cases that have rejected an adult

29

plaintiff's claim of liability based on a headfirst dive into a pool are all distinguishable on their facts. I agree with the Lederman court's assessment that the Illinois cases finding against an adult plaintiff stand for the proposition that it is the very uncertainty of the depth of an in-ground pool that makes diving into one openly and obviously dangerous.[12] Lederman, 119 F.3d at 555. I concur with conclusion of the Lederman court: "Illinois' highest court would hold that the risks associated with Mr. Lederman's injurious dive would have been obvious to a reasonable adult in his position." Lederman, 119 F.3d at 555. The Lederman court also implied that a reasonable adult would not have attempted such a dive because "the depth of the pool at any one point could not be ascertained from outside the pool." Lederman, 119 F.3d at 555. This observation echos Dr. Johnson's conclusion that the texture and pattern of the pool bottom made it " 'difficult if not impossible to judge [its depth].' " Slip

---

[12] These accidents occur even where the plaintiff is familiar with the depth of the pool, but takes an unfortunate dive nevertheless. See, e.g., Osborne, 266 Ill. App. 3d 434. I see no relief for similarly situated plaintiffs short of the disavowal of the open and obvious doctrine by our supreme court. See Ford v. Round Barn True Value, Inc., 377 Ill. App. 3d 1109, 1118 (2007)(MERSCOUGH, J., specially concurring).

op. at 5.  This, however, is not a basis to relieve the plaintiff of his responsibility; rather, it serves to reinforce his responsibility to make such a judgment before attempting a dive. The plaintiff here ignored the danger based on his unwarranted assumption that the ladder at the end opposite the descending steps into the pool suggested a deep-end, safe for diving.

I recognize our supreme court has held "[t]he existence of an open and obvious danger is not a per se bar to finding that a defendant who owns, occupies or controls land has a duty to exercise reasonable care."  Jackson v. TLC Associates, Inc., 185 Ill. 2d 418, 425, 706 N.E.2d 460 (1998).  However, the analysis undertaken in Jackson has no application here.  Our supreme court expressly noted that the issue in Jackson did not involve "the risk of injury from diving into water that is too shallow. [That] risk[] is [not] at issue here."  Jackson, 185 Ill. 2d at 426.  The risk of injury involved striking a submerged pipe, which our supreme court noted "stemmed solely from TLC's conduct."  Jackson, 185 Ill. 2d at 426.  In other words, Jackson involved a risk of injury known to the owner but unknown to the invitee.  Because the risk of injury differed from "the risk of injury from diving into water that is too shallow," the court in Jackson invoked the traditional duty analysis of likelihood of injury and the foreseeability of such injury.  In my judgment, we

31

need not engage in such analysis in this case on the authority of <u>Bucheleres</u>.

Finally, I reject out of hand any suggestion by the plaintiff that a mental image in the form of an "optical illusion" is analogous to a "submerged pipe." The two are of different natures; they are not analogous.

Because a reasonable adult in the plaintiff's position would have appreciated the danger of diving into a pool of unknown depth, I conclude the circuit court correctly entered summary judgment. I would affirm as to each defendant.

# REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
## (Front Sheet to be attached to each Opinion)

_____

Please use the ]
following form:]

]                 DONALD DUFFY,
]
]                         Plaintiff-Appellant,
]                 v.
]
]                 JAMES G. TOGHER, RENEE TOGHER,
]                 LATHAM PLASTICS, INC. f/k/a Pacific
]                 Pools Industries, Inc., BLACK
]                 OAK POOL SUPPLY, INC., and
]                 PACIFIC INDUSTRIES, INC.,
]
]                         Defendants-Appellees
]
]                 (Shaunna Travis,
]
]                         Defendant).

Complete      ]
   TITLE      ]
of Case.      ]

_____

Docket No.    ]              No. 1-06-1447
              ]   Appellate Court of Illinois
COURT         ]   First District, First Division
              ]
              ]              MARCH 31, 2008
Opinion Filed ]   (Month, Day and Year)

_____

              ]
JUSTICES      ] JUSTICE ROBERT E. GORDON delivered the opinion
              ] of the court.
              ]
              ] CAHILL, P.J., concurs.  GARCIA, J., dissents.

_____

APPEAL from the] Lower Court and Trial Judge(s) in form indicated
Circuit Court ] in margin:
of Cook County;] Appeal from the Circuit Court of Cook County.
the Hon:_____ ]
Judge Presiding] Honorable Ralph Reyna, Judge Presiding.

_____

For APPELLANTS  ]Indicate if attorney represents APPELLANTS or
John Doe of   ]APPELLEES and include attorneys of counsel.
Chicago.      ]Indicate the word NONE if not represented.
For APPELLEES, ]_____
Smith and     ]
Smith, of     ]
Chicago.      ]
Brown,        ]
of Counsel.   ]
              ]
              ]PLEASE SEE REVERSE SIDE FOR LIST OF ATTORNEYS OR RECORD.

No. 1-06-1447

]
]
**Also add atty.]**
**for third party]**
**appellants     ]**
**or appellees.   ]**

_____(USE REVERSE SIDE IF NEEDED_____

## ATTORNEYS OF RECORD

**William J. Harte**
**Chicago, Illinois 60602**
**Attorney for Appellant**
**Attn: William J. Harte**
**OF COUNSEL**

**The Healy Law Firm**
**Chicago, Illinois 60602**
**Attorneys for Appellant**
**Attn: Martin J. Healy, Jr.**
  **Jack Cannon**
  **William J. Harte**
  **Joan M. Mannix**
  **OF COUNSEL**

**Bollinger, Ruberry & Garvey**
**Chicago, Illinois   60661**
**Attorneys for Appellees, James G. Togher**
**and Renee Togher**
**Attn: Christopher G. Buenik**
  **OF COUNSEL**

**Tressler, Soderstrom, Maloney & Priess, LLP**
**Chicago, Illinois   60606-6399**
**Attorneys for Appellee, Latham Plastics, Inc.**
**Attn: John H. Huston**
   **OF COUNSEL**

**Doherty & Progar, LLC**

**Attorneys for Appellee, Black Oak Pool & Supply, Inc.**
**Attn: Michael J. Progar and Stephanie Waxler Weiner**
   **OF COUNSEL**