# Illinois Official Reports

## Appellate Court

---

> ### *Becker v. Alexian Brothers Medical Center*, 2021 IL App (1st) 200763

---

| | |
|---|---|
| Appellate Court Caption | LAURA BECKER, Plaintiff-Appellant, v. ALEXIAN BROTHERS MEDICAL CENTER, a Foreign Corporation; POWER CONSTRUCTION COMPANY, LLC, an Illinois Limited Liability Company; MACKIE CONSULTANTS, LLC., an Illinois Limited Liability Company; HDR ARCHITECTURE, INC., a Foreign Corporation; BERGER EXCAVATING CONTRACTORS, INC., an Illinois Corporation; and BERGER LEASING, INC., an Illinois Corporation, Defendants-Appellees. |
| District & No. | First District, First Division<br>No. 1-20-0763 |
| Filed | November 15, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-L-63012; the Hon. Martin S. Agran, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Gregory W. La Cost, of R.F. Wittmeyer, Ltd., of Arlington Heights, for appellant.<br><br>Stephen R Swofford and Thomas L. O'Carroll, of Hinshaw & Culbertson LLP, of Chicago, for appellee Alexian Brothers Medical Center. |

Patricia J. Hogan, Ehren V. Bilshausen, and James F. Maruna, of Cassiday Schade LLP, of Chicago, for appellee Power Construction Company, LLC.

James M. Hoey, of Nielsen, Zehe & Antas, P.C., of Chicago, for appellee Mackie Consultants, LLC.

Gregory J. Bird, of Scott & Kraus, LLC, of Chicago, for appellee HDR Architecture, Inc.

Frank Kasbohm, of Feiereisel & Kasbohm, LLC, of Chicago, for other appellees.

Nicholas Nepustil, of Benjamin & Shapiro, Ltd., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

| Panel | JUSTICE COGHLAN delivered the judgment of the court, with opinion. Justices Pucinski and Walker concurred in the judgment and opinion. |

## OPINION

¶ 1    In this personal injury action, plaintiff Laura Becker appeals from the trial court's order granting summary judgment in favor of defendants Alexian Brothers Medical Center (Alexian Brothers), Power Construction Company, LLC (Power Construction), Mackie Consultants, LLC (Mackie Consultants), HDR Architecture, Inc. (HDR Architecture), Berger Excavating Contractors, Inc. (Berger Excavating), and Berger Leasing, Inc. (Berger Leasing) (collectively referred to as defendants), for injuries she sustained when she fell after stepping onto a metal trench grate in the parking lot of Alexian Brothers. On appeal, Becker argues that a genuine issue of material fact exists as to whether the grate posed an "open and obvious" danger. She also argues that the trial court abused its discretion in denying her request for additional discovery that was needed to adequately respond to the summary judgment motion. We reverse and remand for further proceedings.

¶ 2                                    I. BACKGROUND
¶ 3    In 2008, a "Chapel Relocation Project" (project) was completed at Alexian Brothers. As part of the project, metal grates were installed over trench drains in the parking lot. Power Construction served as the project's general contractor, Mackie Consultants was the civil engineering firm, HDR Architecture was the architect, and Berger Excavating and Berger Leasing were the excavation subcontractors.

¶ 4    About seven years after the project was completed, Becker injured herself when she tripped and fell over the grate, which comprised of downward sloping gaps that varied in size from approximately three inches wide and lengths of up to seven inches. On each side of the grate was a five-inch-wide strip with a natural concrete-gray finish. Becker commenced a negligence action against Alexian Brothers, alleging that when she was "walking from the parking lot toward the front entrance *** she encountered a dangerous and defective area of pavement having improper drainage grates with large openings that created a tripping hazard for pedestrians entering and/or exiting the front entrance to" the medical center. She amended the complaint to add the remaining defendants based on their involvement with the project.

¶ 5    During her discovery deposition, Becker stated that at about 5:30 a.m. on July 29, 2015, she pulled into the parking lot at Alexian Brothers, parked her car, and began walking north through the parking lot in her open-toe sandals toward the West Tower entrance. It was still dark outside and the ground was dry but "[t]he air was *** very heavy, a lot of humidity." There was a road between the parking lot and sidewalk. As Becker approached the road, she looked both ways for cars but "[t]here were no cars in the vicinity when [she] was out there." She continued to walk but the "grate was very difficult to see." When she stepped onto the grate, her right foot got caught, causing her to fall and sustain injuries.

¶ 6    The following colloquy with defense attorneys addressed the circumstances relating to her fall:

"Q. Am I correct that you did not have to walk over the grate to get to the entrance?

A. Yes.

Q. You could have walked directly to the sidewalk without walking over the grate[?]

***

A. Yes.

Q. So you walked on the grate. Did you think about stepping over the grate?

A. I did not—I saw the grate about one to two feet before the grate. What I saw was something rust colored, and it looked like it blended in.

Q. And what do you mean blended in?

A. The color.

***

A. It looked like it blended into the *** asphalt.

***

Q. *** I think you had indicated that *** within three or four feet of the grate where you fell was the first time that you noticed that there was a grate there; is that a fair statement?

***

A. I said approximately one to three feet.

***

Q. At that point in time, was there anything that obscured your vision of the grate?

***

A. No.

Q. What I'm getting at is sometimes fog rolls in, you know, odd things like that. Was there anything that obscured the vision that you'd had of the trench drain?

\*\*\*

A. As I said before, the air was very humid. So that may have a little bit. And it was still somewhat dark outside.

Q. But in the step that you had right when you stepped onto the grate, you were able to see that it was indeed a grate, correct?

A. Yes."

About two years after her deposition, Becker averred in an affidavit that she "only saw the vague outline of the grate without knowing it was a grate a brief moment before [she] fell and it was rust colored and it blended in with the surrounding area and was very difficult to see due to the darkness and the weather conditions." She also averred that she "could not appreciate the danger of the grate and [she] could not see the length and width of the grate holes, and the fact that the holes angled downward instead of being flat."

¶ 7   Scott Leopold was a licensed structural engineer with 35 years of professional experience. In his affidavit, Leopold opined that the "lack of apparent contrast due to low lighting between the dark brown rust on the cast iron surface and the shaded interior of the trench camouflaged the openings in the surface of the grating." Leopold also opined that

"[t]he dangerous condition posed by the large gaps and downward sloping vanes at subject grating would not be obvious to a reasonably cautious pedestrian confronted with the conditions that existed at the time of the occurrence. Laura Becker was confronted with conditions of dim lighting, obscuration due to high humidity or fog, lack of visual contrast of vans and slots, similarity of trench grating to decorative bands in the driveway, the downward slope of the surface of the grating away from her point of view, and a lack of warning, all in a hospital parking lot setting."

¶ 8   Paul Meyer was a project manager for Power Construction and worked on the project. At his discovery deposition, Meyer stated that he did not feel the grate was dangerous and "[y]ou see them all over Chicago like that." Robert Paluch, a civil engineer for Mackie Consultants, also worked on the project. At his discovery deposition, Paluch stated that the grates were "not a designed walkway" but used for drainage collection and "the sidewalk was designed for walking on." He also stated that "I don't know that I would be over there in the first place to step on [the grate] \*\*\*. \*\*\* It's not where you would normally be. \*\*\* I'd get on the sidewalk and walk towards the hospital."

¶ 9   Defendants moved for summary judgment, arguing that they had no duty because the grate was an "open and obvious" condition. The trial court agreed and granted defendants' motions for summary judgment.[1]

¶ 10                                 II. ANALYSIS

¶ 11   Becker argues that the trial court erred in granting summary judgment "based on the theory of 'open and obvious' because facts were presented that each Defendant had a duty to protect

---

[1]In its brief, Power Construction challenges the trial court's ruling denying its summary judgment motion on the basis that it was not a possessor of the land. We decline to address that issue because the trial court limited its ruling to the common issue of whether the grate was "open and obvious."

Plaintiff and others utilizing the pathway from the parking lot to the entrance of the hospital." We allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief, which advocated for a finding that the grate was not an open and obvious condition, raising mainly public policy considerations and implications of the open and obvious doctrine.

¶ 12    In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22. "On appeal from an order granting summary judgment, a reviewing court must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether summary judgment is proper as a matter of law." *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. We review the trial court's summary judgment ruling *de novo*. *Dynak v. Board of Education of Wood Dale School District 7*, 2020 IL 125062, ¶ 15 (plurality opinion).

¶ 13    To state a negligence cause of action, a plaintiff must plead and prove "(1) that defendants owed a duty, (2) that defendants breached the duty they owed, and (3) that the breach proximately caused the injury." *Stanphill v. Ortberg*, 2018 IL 122974, ¶ 33. If the plaintiff fails to establish any element of her claim, summary judgment for the defendant is appropriate. *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 15. Becker's contentions are limited to the duty element of negligence. "The duty inquiry focuses on whether the plaintiff and the defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 22. "Whether a duty exists is a question of law for the court to decide." *Id.* ¶ 21.

¶ 14    "In Illinois, the open and obvious doctrine is an exception to the general duty of care owed by a landowner." *Park v. Northeast Illinois Regional Commuter R.R. Corp.*, 2011 IL App (1st) 101283, ¶ 12. " 'Obvious' means that 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.' " *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 16 (quoting Restatement (Second) of Torts § 343A cmt. b, at 219 (1965)). "When a condition is deemed open and obvious, the likelihood of injury is generally considered slight as it is assumed that people encountering potentially dangerous conditions that are open and obvious will appreciate and avoid the risks." *Park*, 2011 IL App (1st) 101283, ¶ 12; *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 448 (1996); *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 148 (1990). The determination of whether a condition is open and obvious is based on an objective standard. *Foy v. Village of La Grange*, 2020 IL App (1st) 191340, ¶ 21.

¶ 15    Becker argues that the trial court improperly decided whether the grate was an open and obvious condition as a question of law rather than a question of fact. Based on our review of the record, we agree.

¶ 16    In this case, construing the affidavits, deposition testimony, and photographs in the light most favorable to Becker, it is not clearly evident whether the rust-colored "camouflaged" metal trench grate with downward sloping gaps presented an open and obvious hazard to a reasonable person exercising perception, intelligence, and judgment. See *Bruns*, 2014 IL 116998, ¶ 16 (objective standard applies). We believe the pleadings and the documents attached reveal a genuine issue of material fact concerning the visibility in dim lighting, not of the grate, but of the downward sloping gaps where Becker's right foot got caught. See *Barrett v. FA Group, LLC*, 2017 IL App (1st) 170168, ¶¶ 35, 37 (question of fact concerning the size

- 5 -

and depth of the pothole that was in an area of dim lighting); *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14, 18 (2010) (engineer's opinion that "the lack of contrast paint 'disguised' the change in vertical elevation between the parking lot and the curb, creating an impermissible tripping hazard that was 'not obvious' " raised a dispute about the physical nature of the condition); *Duffy v. Togher*, 382 Ill. App. 3d 1, 6, 8 (2008) (genuine issue of material fact as to whether the unusual floor that created a deceptive impression of depth was "an accident waiting to happen"); *Buchaklian v. Lake County Family Young Men's Christian Ass'n*, 314 Ill. App. 3d 195, 202 (2000) (question of fact as to whether the condition of the mat was open and obvious based on its size, the lack of significant color contrast between the defect and the surrounding mat, and the short time the plaintiff had to discover the defect as she took a few steps toward the mat before falling).

¶ 17    The cases defendants cite are distinguishable. In *Bruns*, 2014 IL 116998, ¶¶ 4, 9, the plaintiff repeatedly noticed the crack in the sidewalk, and the parties agreed that the sidewalk defect was open and obvious as a matter of law. In *Foy*, 2020 IL App (1st) 191340, ¶¶ 3, 23, the plaintiff admitted that the raised sidewalk deviation was readily visible. In *Ballog v. City of Chicago*, 2012 IL App (1st) 112429, ¶¶ 3, 31, the plaintiff fell over an unfilled gap in the street but "the physical nature of the condition where she fell did not differ from the condition that she was able to safely traverse on the opposite side of the street." Unlike those cases, Becker had not previously encountered the same defect and disputes the visibility of the downward sloping gaps of the metal grate.

¶ 18    Here, reasonable minds could conclude that the metal trench grate with downward sloping gaps that "blended in" did not present an open and obvious hazard because the gaps of varying sizes were not visible in dim lighting. Reasonable minds could also conclude that the grate did present an open and obvious hazard, but pedestrians would be distracted by looking for oncoming vehicles on the roadway. See *Barrett*, 2017 IL App (1st) 170168, ¶ 36 (whether the plaintiff should have used the sidewalk was not a relevant consideration because the court was tasked with determining whether a genuine issue of material fact existed but not to try a question of fact). Because reasonable minds could disagree on whether the downward sloping gaps of the metal trench grate were visible and an open and obvious hazard, the appropriate arbitrator of that issue is the trier of fact. See *Buchaklian*, 314 Ill. App. 3d at 203 ("summary judgment is not proper when reasonable minds could differ as to whether a condition was open and obvious"); *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004) (summary judgment "is a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt"). Therefore, we reverse the grant of summary judgment in favor of defendants. Based on our decision, we need not address the applicability of the distraction exception to the open and obvious rule, weigh the traditional four duty factors, or decide whether the trial court abused its discretion in denying Becker's discovery requests.

¶ 19                                III. CONCLUSION

¶ 20    The trial court's ruling granting summary judgment in favor of defendants on the issue of "open and obvious" is reversed, and we remand for further proceedings.

¶ 21    Reversed and remanded.